IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 13-cv-03150-CBS

LARRY DON MCCUE,

                    Plaintiff,

v.

CAROLYN W. COLVIN,

                    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Shaffer

      This action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Larry Don McCue's ("Plaintiff") application for Disability Insurance Benefits ("DIB").  Pursuant to the Order of Reference dated June 25, 2014, this civil action was referred to the Magistrate Judge "for all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).  (*See* Doc. No. 22). The court has carefully considered the Complaint (filed November 20, 2013) (Doc. No. 1), Defendant's Answer (filed February 7, 2014) (Doc. No. 7), Plaintiff's Opening Brief (filed April 11, 2014) (Doc. No. 13), Defendant's Response Brief (filed May 23, 2014) (Doc. No. 16), Plaintiff's Reply (filed June 11, 2014) (Doc. No. 17), the entire case file, the administrative record, and applicable case law.  For the following reasons, the court affirms the Commissioner's decision.

# BACKGROUND

In August 2010, Plaintiff filed an application for disability benefits, alleging a disability onset date of June 10, 2010. (*See* Social Security Administrative Record (hereinafter "AR") at 147).  Plaintiff alleged that his ability to work was limited by Post Traumatic Stress Disorder ("PTSD"), mycobacterium avium complex ("MAC lung disease"), and hearing loss.[1] (*See* AR at 172). Plaintiff was born on March 28, 1950, and was 60 years old on the date of his alleged disability onset. (AR at 35, 147). He completed four years of college and obtained a business degree, served in the military, and worked as a manager and salesman for a food brokerage company. *Id*. at 46-47. In addition, Plaintiff worked briefly as a real estate broker. *Id*. at 47. After his initial application was denied, Plaintiff requested a hearing, which was held on March 23, 2011, before an Administrative Law Judge ("ALJ"). *See Id*. at 41-75, 103.

Plaintiff was represented by counsel at the hearing and testified that he suffered from PTSD and depression. (AR at 55). He stated that, following a trip to the Vietnam Veterans Memorial in Washington, D.C., his symptoms became more severe and interfered with his ability to socialize and interact with others, *id*. at 58, concentrate and focus on tasks, *id*. at 66, and help with household chores, *id*. at 68. He stated that he did not think he could perform even a low-stress job that required only limited contact with other people. *Id*. at 67. However, Plaintiff also testified that he attended church with his wife on a weekly basis, *id*. at 58, went shopping twice a week, *id*. at 57, spent time with his daughters and grandchildren, *id*., could read the newspaper every morning without difficulty, *id*. at 67, and could follow a sports game from beginning to end with no trouble, *id*. at 68.

---

[1] The ALJ concluded that Plaintiff's MAC lung disease and hearing loss were not severe impairments. (AR at 30). Plaintiff has not challenged these conclusions in his appeal.

Jamie Massey testified at the hearing as a vocational expert ("VE").  The VE testified that Plaintiff's prior work experience as a food sales representative and food sales manager was classified as ranging from "sedentary" to "light" by the Dictionary of Occupational Titles exertional guidelines. (AR at 70). The ALJ asked the VE to assume hypothetically that an individual of Plaintiff's age — with no exertional limitations, and the same education and past work experience as Plaintiff — had the following non-exertional limitations: (1) can only have occasional interaction with the public; and (2) can only have occasional interaction with co-workers and supervisors. *Id*. The VE testified that an individual with those limitations could not perform the work involved in Plaintiff's previous job. *Id*.

However, the VE identified three other jobs that someone with those limitations could perform and testified about the number of each position in the regional and national economy: (1) store laborer (6,500 Colorado; 394,000 National); (2) janitor/cleaner (15,700 Colorado; 1,025,000 National); and (3) housekeeper (9,700 Colorado; 533,000 National).  *Id*. at 71.  The ALJ asked the VE whether a person would be unemployable if — due to symptoms or side effects of medication — the individual was off task for more than ten percent of the workday. *Id*. The VE testified that such an individual would not be able to obtain competitive employment. *Id*. In response to questions from the ALJ, the VE further testified that an unskilled worker could have no more than one absence per month before he would be precluded from employment. *Id*.

Plaintiff's counsel then asked the VE how "occasional interaction" — as used by the ALJ — was defined. *Id*. at 72. The VE testified that "occasional interaction" means "up to a third of the workday." *Id*. Plaintiff's counsel then asked the VE to assume that the hypothetical individual could have only rare interactions with co-workers, the public, and supervisors. *Id*. at

73. The VE testified that under those circumstances, the three previously identified jobs would be eliminated. *Id*. at 73-74.

On April 27, 2012, the ALJ issued his decision denying benefits. *Id*. at 24-40. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful employment since June 10, 2010. *Id*. at 29. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder and PTSD. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled a listed impairment. *Id*. at 30-32.

The ALJ then assessed the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can have only occasional interaction with the public, co-workers, and supervisors.

*Id*. at 32. In fashioning Plaintiff's RFC, the ALJ discussed much of the medical evidence in Plaintiff's medical records. The ALJ noted that the objective medical evidence demonstrated that Plaintiff's symptoms had improved with counseling and medication. *Id*. at 33. In addition, the ALJ noted that Plaintiff's objective records demonstrated that, although Plaintiff presented as sad, he had normal insight and judgment. *Id*. at 34. In addition, the ALJ credited the opinion of Dr. James Wanstrath, a State agency consultant, who reviewed Plaintiff's medical records and prepared a mental RFC assessment. *Id*. at 35. Dr. Wanstrath concluded that Plaintiff's symptoms

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

were not disabling and that Plaintiff could "accept supervision and relate to coworkers if contact is not frequent or prolonged." *Id*. at 92. The ALJ also found Plaintiff's allegations regarding his limitations to be credible, but only to the extent that they were consistent with the RFC. *Id*. at 34.

At step four, based on the RFC set forth above, the ALJ found that Plaintiff could not perform any past relevant work. *Id*. at 35. At step five, the ALJ found: "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. at 36. Specifically, the ALJ found that Plaintiff could work as a store laborer, a janitor/cleaner, or a housekeeper. *Id*. Because there were a significant number of jobs that Plaintiff could perform, the ALJ found that Plaintiff did not meet the definition of "disabled" for purposes of the Social Security Act. *Id*. at 36-37. Accordingly, Plaintiff's application for disability benefits was denied.

Following the ALJ's decision, Plaintiff requested review of the ALJ's decision. *Id*. at 23, 231-40. The Appeals Council denied his request for review on October 10, 2013. *Id*. at 5-10. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on November 20, 2013. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question

instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ erred in (1) assessing the medical evidence; (2) concluding that Plaintiff's condition did not meet one of the listed impairments (3) failing to give enough weight to the VA disability determination; and (4) concluding that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. These arguments are not persuasive.

### A.     ALJ's Consideration of the Medical Evidence

Although it is presented as several different arguments in his brief, Plaintiff's primary contention is that the RFC is not support by substantial evidence. (*See* Doc. 13 at 26-30, 31-33,

43-43). In support of his argument, Plaintiff makes a number of objections to the ALJ's assessment of his medical records. *Id.* The court is not persuaded by any of these arguments.

Plaintiff first claims the ALJ erred in assigning "great weight" to the opinions of Dr. Wanstrath, the State agency psychological consultant. *Id.* at 27-30. And he contends that any reliance on Dr. Wanstrath's opinions is legal error because those opinions were formulated without the benefit of subsequent medical records. *Id.* Contrary to Plaintiff's suggestion, however, "RFC assessments by State agency medical . . . consultants . . . are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairments." Social Security Ruling 96-6p, 1996 WL 374180, at *4 (July 2, 2996). These consultants are "highly qualified" and "are also experts in Social Security disability evaluation."[3] 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The ALJ must explain the weight given to the consultant in his written decision. *Id.* §§ 404.1527(e)(2)(H), 416.927(e)(2)(ii). "In evaluating RFC assessments prepared by state consultants, the ALJ follows the same process that applies to any opinion evidence, considering factors such as 'the supporting evidence in the case record.'" *Brown v. Colvin*, No. 4:12-CV-00247-FL, 2014 WL 1282255, at *15 (E.D.N.C. Mar. 27, 2014) (quoting 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d)). An ALJ may give significant weight to the opinion of a state agency medical consultant "so long as it is consistent with the record." *Id.* (citing *Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005)); *see also Maroney v. Colvin*, No. 13-cv-2279-

_____

[3] Plaintiff suggests that Dr. Wanstrath's opinions are, as a matter of law, incompetent, irrelevant, and immaterial, and entitled to only minimal weight. The court disregards such unsupported ad hominem attacks. Indeed, while the court recognizes the need for zealous advocacy, the court also notes that throughout the Opening Brief and Reply Brief, Plaintiff's counsel frequently employs vitriolic and hyperbolic language that adds little to the substance of the arguments. These tactics are distracting and do not advance Plaintiff's cause, and the court notes that Plaintiff's counsel has been cautioned on this matter on previous occasion. *See Phillips v. Colvin*, No. 13-cv-03436-RM, 2015 WL 4639738, at *5 n.6 (D. Colo. Aug. 5, 2015).

WJM, 2014 WL 4783380, at * (D. Colo. Sept. 25, 2014) (finding no error in the ALJ's weighing of the medical evidence where it was supported by the substantial evidence in the record). Thus, the ALJ was entitled to look to, and rely upon, the opinions of Dr. Wanstrath in fashioning the RFC. *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (a non-examining physician's opinion is an acceptable source, which the ALJ is entitled to consider).

Here, the ALJ explained that he was giving great weight to Dr. Wanstrath's opinion because it was based on objective medical evidence and was consistent with the credible portions of Plaintiff's testimony. Indeed, Dr. Wanstrath's opinion was consistent with medical evidence and testimony in the record demonstrating that Plaintiff had social relationships, good memory, the ability to stay focused, logical thoughts and normal judgment, and even a reported improvement in his symptoms. (*See* AR at 34, 57, 344, 350-51, 354). Plaintiff argues that Dr. Wanstrath's opinion was rendered prior to the inclusion of the 2011 treatment notes, but, tellingly, does not specify which, if any, of the subsequent treatment notes dictates a different outcome. Indeed, these notes do not undermine Dr. Wanstrath's opinion; rather, they are consistent with his conclusions. The 2011 treatment records demonstrate that Plaintiff had normal thought processes, *id*. at 426, 428, 434, 442; was feeling better, *id*. at 434; and felt that his medications were helping him, *id*. at 426, 427. The records also show that Plaintiff's issues with nightmares improved to the point that he reduced his medicine on his own. *Id*. at 441. Because substantial evidence supports the ALJ's decision to assign great weight to Dr. Wanstrath's opinion, Plaintiff's arguments in this regard are rejected.

Plaintiff also contends that the ALJ failed to properly apply the treating source rule. (Doc. 13 at 31-33). His argument is problematic for a number of reasons. First, Plaintiff appears to claim treating source status for his VA medical team as a whole, as opposed to the individual

medical professionals.[4]  The so-called "treating source rule" is embodied in the regulations at 20

C.F.R. § 404.1527(c), entitled "How we weigh medical opinions." Medical opinions are defined

as "statements from physicians and psychologists or other acceptable medical sources that reflect

judgments." 20 C.F.R. § 404.1527(a)(2). As it is relevant here, "acceptable medical sources" are

defined to include only licensed physicians and licensed or certified psychologists. 20 C.F.R.

§ 404.1513(a). Accordingly, the VA medical group, as an entity, is simply not capable of

offering a medical opinion.

Second, Plaintiff does not identify which opinions the ALJ failed to credit or which

opinions dictate a different outcome. (*See* Doc. 13 at 32). Rather, the record shows that the ALJ

considered all of Plaintiff's medical records and discussed them in some detail. (AR at 29-35).

Moreover, the court has reviewed the record in its entirety and could not locate any treating

source opinions regarding functional limitations on Plaintiff's ability to work.

Third, Plaintiff also seems to argue that Dr. Post was a treating source, and therefore, his

opinions regarding Plaintiff's inability to work were entitled to greater weight. (Doc. 13 at 42-

43). As a preliminary matter, the court notes that Dr. Post's conclusion — that Plaintiff was

unemployable — was an issue reserved for the Commissioner and not entitled to any special

significance. *See* Social Security Ruling 96-5p, 1996 WL 374183, at *1 (SSA July 2, 1996)

("treating source opinions on issues reserved to the Commissioner are *never* entitled to

controlling weight or special significance") (emphasis added). Furthermore, Plaintiff's reliance

on the treating source doctrine, as it relates to Dr. Post, is misplaced. A treating source is a

---

[4] Even reliance on the individual providers would be problematic for Plaintiff. Many of the treatment notes are by Ms. Linda Perrin, who is a nurse and, therefore, not considered an "acceptable medical source." *See* Social Security Ruling 06-03p, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006). As such, she cannot issue medical opinions, *see* 20 C.F.R. § 404.1527(a)(2), nor be considered a treating source whose opinions must be evaluated to determine whether they are entitled to controlling weight, *see* C.F.R. § 404.1513(d). *See also* Social Security Ruling 06-03p, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a relationship that requires both duration and frequency. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."). In this case, Dr. Post met with Plaintiff only once, which certainly fails to meet the relationship requirements necessary to be considered a treating source.

Nonetheless, the opinions of "other sources" such as Dr. Post still must be considered, applying the same factors as are generally used to assess treating source opinions. Social Security Ruling 06-03p, 2006 WL 2329939 at *4 (SSA Aug. 9, 2006); 20 C.F.R. §§ 404.1527(c)(2)-(6) & 416.927(c)(2)-(6). The regulations do not require the ALJ to specifically discuss all of the factors. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Among these factors are whether the opinion is consistent with and supported by the other evidence of record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Here, the ALJ specifically invoked this consideration. The ALJ noted that the opinions of the Department of Veteran Affairs — which included Dr. Post's assessment that Plaintiff is unemployable — were contradicted by the evidence of record, including Plaintiff's own testimony. (AR at 35). Thus, the ALJ did not reject Dr. Post's opinion simply because he was not a treating source.

Moreover, the ALJ's determination regarding Dr. Post's opinions has ample support in the record. For example, contrary to Dr. Post's conclusion that Plaintiff could not have social

contact, Plaintiff testified that he maintained social relationships with his daughters and grandchildren, *id*. at 57; attended church every week, *id*. at 58; and went shopping twice a week, *id*. at 57. And despite Dr. Post's conclusion that Plaintiff could not sustain concentration, Plaintiff testified that he regularly read the newspaper and watched sports games without any trouble, *id*. at 67-68, and he had no difficulty concentrating during the hour-long disability hearing. *Id*. at 31. Plaintiff's medical records also contradicted Dr. Post's findings because — as discussed above — Plaintiff's providers consistently noted that Plaintiff demonstrated logical and goal oriented thought processes as well as normal insight and judgment. And in 2011, Plaintiff reported that his medications were working and that he was feeling better. In addition, Dr. Post's assessment was internally inconsistent. Although Dr. Post noted that Plaintiff could not sustain concentration adequately to maintain employment, *id*. at 402, he also noted that Plaintiff's attention and memory were normal. *Id*. at 398-99. And while Dr. Post concluded that Plaintiff was unemployable due to PTSD, he also noted that there were *not* PTSD signs and symptoms causing total occupational and social impairment. *Id*. at 402-03. Therefore, the ALJ did not err in granting little weight to Dr. Post's opinions.

Finally, Plaintiff argues that the ALJ did not give proper weight to the Global Assessment Functioning ("GAF") scores reflected in Plaintiff's treatment records. "The GAF scale is used by clinicians to report an 'individual's overall level of functioning.'" *Weigel v. Astrue*, 425 F. App'x 706, 708 n.3 (10th Cir. 2011) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)). While low GAF scores can indicate serious functional impairments in social, occupational, or educational settings, *see Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007), nothing in any of the medical records indicate that these scores undermine the ALJ's RFC determination. Nor do the medical

records indicate an impairment that would seriously interfere with Plaintiff's ability to work. "Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work." *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy."). Here, none of the providers explained how they calculated each GAF score or how it impacted plaintiff's functional capabilities. And the ALJ reasonably noted the incongruity between Plaintiff's apparent improvement and the decrease in GAF scores. Therefore, it was reasonable to assign little weight to these GAF scores.

## B.    ALJ's Evaluation of Listed Impairments at Step Three

Plaintiff also contends that the ALJ erred at step three when he concluded that Plaintiff did not meet or equal either the paragraph "B" or paragraph "C" criteria of listing 12.04, 12.06, or 12.08. (Doc. 13 at 33-41). Plaintiff argues that the ALJ's findings in this regard were unsupported. The court disagrees.

Appendix 1 of Subpart P, 20 C.F.R. § 404, lists impairments that preclude "substantial gainful employment." *See* 20 C.F.R. § 404.1520(d). At step three, the claimant bears the burden of demonstrating — through medical evidence — "that his impairments 'meet all of the specified medical criteria' contained in a particular listing." *Riddle v. Halter*, 10 F. App'x 665, 667 (10th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530. If the claimant does not meet or equal a listing, the ALJ must discuss the evidence and explain why he found that the claimant was not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Here, the ALJ provided detailed findings in concluding that Plaintiff's condition did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.08. With regard to the "B" criteria, the ALJ found that Plaintiff's (1) activities of daily living are at most mildly restricted; (2) social functioning was only moderately restricted; and (3) concentration, persistence, or pace was only mildly limited by his impairments. (AR at 31). The ALJ also found that "[Plaintiff] has experienced no episodes of decompensation, which have been of extended duration." *Id*.

In arriving at these conclusions, the ALJ relied on Plaintiff's own reports and testimony regarding his capabilities. Indeed, Plaintiff reported having no trouble tending to his own personal hygiene. *Id*. at 188. And Plaintiff reported that he performed yard work, helped his wife with other household chores, paid bills, handled a savings account, and could drive a car by himself. *Id*. at 68, 189-190. Furthermore, and contrary to his reports of difficulties with socialization, Plaintiff reported that he went to church weekly, went shopping twice a week, and saw his family on a regularly basis. *Id*. at 31, 68, 190-91. In addition, although Plaintiff testified that he had trouble with concentration and staying focused, he also testified that he could watch a sports game and read a newspaper with no difficulty. *Id*. at 67-68. The ALJ also noted that Plaintiff was able to stay focused and provide relevant answers throughout the hearing. *Id*. at 31. *See Qualls v. Apfel*, 260 F.3d 1368, 1373 (10th Cir. 2000) ("Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."). And the ALJ's findings are further supported by Dr. Wanstrath's conclusion — following a review of Plaintiff's mental health records — that Plaintiff did not meet the "B" or "C" criteria. Dr. Wanstrath noted that Plaintiff had no psychosis, no paranoia, was still married, and still had meaningful social relationships. *Id*. at 88-88, 387.

With regard to decompensation and the "C" criteria[5], the ALJ noted Dr. Wanstrath's finding of three episodes of decompensation; however, the ALJ discounted those findings because they were not supported by the evidence of record. *Id.* at 35. Indeed, the episodes relied on by Dr. Wanstrath do not satisfy the regulatory definition. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C4 (The term "repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."). Dr. Wanstrath noted that Plaintiff quit his job in 2005 and had to be medicated for depression and anxiety; however, this incident occurred outside of the disability period. *Id.* at 87-88. Dr. Wanstrath's notes also indicate that Plaintiff had suicidal intentions wherein he thought about driving his car off of a bridge. However, this also occurred at some indeterminate point prior to the disability onset date. *Id.* The only incident that took place within the disability period was the incident following Plaintiff's visit to the Vietnam Veterans Memorial on June 10, 2010. Thus, the ALJ did not err in finding that Plaintiff did not have three extended periods of decompensation.

On appeal, Plaintiff asserts that the ALJ failed to consider whether changes to his medication during the relevant period could constitute episodes of decompensation, and he lists three changes to his depression medication and his nightmare-reduction medication. (Doc. 13 at 38-39). In support of his argument that such occurrences could constitute episodes of decompensation, he cites 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00C4, which notes that

---

[5] As it relates to the "C" criteria, Plaintiff has only offered arguments regarding decompensation. Although he states that he has demonstrated that he meets all three criteria, this argument is bare and undeveloped. Thus, the court will not address it. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review."). To the extent Plaintiff relies on his own assertions that his wife is his 24/7 caretaker, he has not cited any medical evidence to support this allegation. *See Sullivan*, 493 U.S. at 521 ("a claimant may be found to be disabled if *medical evidence* of his impairment matches or is equal to one of a listing of impairments") (emphasis added).

'[e]pisodes of decompensation may be inferred from medical records showing significant alteration in medication . . . ."

This court recognizes that significant changes in medication could be inferred as indicating episodes of decompensation. But simply listing a number of medication alterations throughout the relevant period is insufficient to create such an inference. One of Plaintiff's citations is merely to a list of medications with no explanations. (AR at 355). Plaintiff's second citation states, without more, that Plaintiff was still depressed and, therefore, his depression medication was being increased. *Id.* at 405. There are no explanations provided to serve as sufficient evidence of an episode of decompensation.[6] *See* 20 C.F.R.  pt. 404, subpt. P, app. 1 § 12.00C4 (defining episodes of decompensation as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in preforming activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."). Therefore, the court agrees with Defendant that this alone is insufficient to support a conclusion that these changes constituted "significant alterations."

For the foregoing reasons, the court concludes that the ALJ did not err in determining that Plaintiff's impairments did not meet or medically equal a listed impairment.[7]

---

[6] This reasoning is equally applicable to the increases in Plaintiff's nightmare medication. The citations offer no explanation with which the court could infer an episode of decompensation. (*See* AR at 393). In fact, this citation indicates that Plaintiff's symptoms were improving. *Id.*

[7] In passing, Plaintiff asserts that the ALJ also erred in failing to further develop the record. (*See* Doc. 13 at 35, 38). Plaintiff has not properly developed this argument, but even if he had, the court would disagree. The record contains ample treatment records relating to Plaintiff's mental health, and these records sufficiently explore Plaintiff's conditions. Although the nonadversarial nature of social security proceedings "imposes a duty on the ALJ 'to ensure that an adequate record is developed . . . consistent with the issues raise,'" the ALJ met that duty here. *See Jimenez v. Astrue*, 385 F. App'x 785, 788 (10th Cir. 2010) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).  Furthermore, in cases such as this one, where Plaintiff was represented by an attorney at the disability hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored," and the ALJ "may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins v. Chater*, 113 F.3d 1162, 1167

**C.     ALJ's Assessment of the VA Disability Finding**

Plaintiff also argues that the ALJ failed to give proper consideration to the decision of the Veteran's Administration, which had previously awarded Plaintiff service-related disability benefits after concluding that Plaintiff was totally disabled. (Doc. 13 at 30-31). The court rejects this claim of error.

Although the findings of other agencies are entitled to weight and must be considered, they are not binding on the Commissioner. *See Musgrave v. Sullivan*, 966 F.2d 1371, 1375 (10th Cir. 1992). Here, Plaintiff contends that because the ALJ "specifically refused to give any weight to the V.A. decision [he] thus did not consider it." (Doc. 13 at 31). The record, however, directly belies such an argument. In his decision, the ALJ stated that he had considered the entire record. (AR at 32). And the ALJ specifically discussed why he was discounting the opinion of the Department of Veteran Affairs. *Id*. at 35 (noting the different standards and procedures for determining disability between the agencies, and concluding that the VA determination was contradicted by the evidence). Thus, the court takes the ALJ at his word that he considered the VA decision. *Hackett v. Barnhart*, 395 F.3d 1168, 1172-73 (10th Cir. 2005) (concluding that the Appeals Council adequately considered the decision in a state compensation proceeding where the Appeals Council wrote that it had considered the evidence and concluded that it did not provide a basis for reversal). Plaintiff's argument — that the VA determination deserved greater weight than it was ultimately afforded — is little more than a request for this court to reweigh the evidence, which it cannot do. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

---

(10th Cir. 1997). At the hearing in this case, Plaintiff's counsel made no indication that further psychological testing or development of the record was necessary to decide the matter.

**D.      Sufficient jobs in the national economy that Plaintiff can perform**

At step five, the ALJ must consider vocational factors (the claimant's age, education, and past work experience) and determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Thompson v. Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Here, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR at 36).

Plaintiff argues that this finding is not supported by the evidence. (Doc. 13 at 43-44). The court disagrees. At the hearing, the ALJ heard testimony from the VE. The ALJ posed hypotheticals to the VE that involved all of the aspects of the RFC ultimately adopted by the ALJ. (AR at 70-72). The VE testified that someone with those restrictions could work as a store laborer, janitor, or housekeeper. *Id*. at 71.

Plaintiff seems to contend that the hypothetical posed by the ALJ was erroneous because the ALJ failed to include limitations regarding Plaintiff's inability to interact with the public and his need for more than one absence per month. (*See* Doc. 13 at 43-44). However, as discussed above, the court has concluded that the RFC was based on and supported by substantial evidence. Because the hypothetical question was based on the RFC, and because the RFC was supported by the record, the court concludes that the ALJ did not err in posing its hypothetical.

Therefore, the court concludes that the ALJ's step five finding — that there were significant jobs in the state and national economies that Plaintiff could perform — is supported by substantial evidence.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the

law and regulations that Mr. McCue was not disabled within the meaning of Title II of the Social Security Act and, therefore, not eligible to receive Disability Insurance Benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear his own fees and costs.

DATED at Denver, Colorado, this 21st day of September, 2015.

BY THE COURT:


s/Craig B. Shaffer
United States Magistrate Judge